**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PAMELA HOOKS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| RDS AUTOMOTIVE GROUP | : | |
| MASERATI OF THE MAINLINE, | : | No. 23-1420 |
| Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                             **September 26, 2023**

Plaintiff Pamela Hooks, who represents herself, alleges her former employer Defendant RDS Enterprises III LP[1] ("RDS") terminated her based on her race, color, gender, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-200e-17, and the Age Discrimination in Employment Act of 1976, 29 U.S.C. §§ 621 *et seq*. RDS moves to dismiss her Amended Complaint[2] for failure to state a claim. (ECF 14.) The Court grants its motion for the following reasons.

## I.      BACKGROUND

Hooks is an African-American woman who was forty-three years old when RDS

---

[1]      Hooks incorrectly identifies Defendant as RDS Automotive Group Maserati of the Main Line. (*See* Def.'s Mem., ECF 14-2 at 1.)

[2]      Because of Hooks' *pro se* status, the Court construes the filings docketed at ECF 8 and ECF 9 together as her Amended Complaint "so as to do justice." Fed. R. Civ. P. 8(e). Federal Rules of Civil Procedure 8 and 10 would ordinarily require a complaint to be filed as a single pleading: (1) bearing a caption with the Court's name and the names of the parties, Fed. R. Civ. P. 10(a); (2) providing "a short and plain statement" of each claim showing that Hooks "is entitled to relief," Fed. R. Civ. P. 8(a)(2); and (3) stating each claim in a numbered paragraph, "each limited as far as practicable to a single set of circumstances . . . ." Fed. R. Civ. P. 10(b). The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Garrett v. Wexford Health*, 938 F.3d 69, 94 (3d Cir. 2019).

terminated her. (Am. Compl., ECF 9, at ECF p. 3.) She maintains RDS discriminated against her "because of [her] protected categories . . . ." (*Id.* at 6.)

RDS hired Hooks as a part time receptionist for its car dealership in December 2021. (Am. Compl. Continuation, ECF 8-1 at ECF p. 12; *see also* ECF 9 at ECF p. 6.) Hooks alleges RDS hired an unnamed "possibly Italian" "younger woman" eight months later "to work [Hooks'] shift (time and days)" and the new hire was given "seniority-based" privileges that Hooks did not have despite her younger age. (ECF 8-1 at ECF p. 16 and ECF 9-1 at ECF p. 1.) Hooks provides no specific examples of any of these privileges. RDS fired Hooks in October 2022 after Hooks went "out of town" and did not obtain coverage for her shift. (ECF 8-1 at ECF p. 15; *see also* ECF 9 at ECF p. 6; ECF 9-1 at ECF p. 3.) Hooks contends RDS's management never asked the younger woman "to cover any day for her" even though the younger woman had been "hired in August to work [Hooks'] shift," including when Hooks went out of town in October 2022. (ECF 9 at ECF p. 6.) After she was fired, Hooks alleges RDS would not talk to her about her termination or about a second chance to work for RDS even though she had previously "witnessed 2 white men get terminated" who were "allowed to return back to work," one of them "immediately." (ECF 9, at ECF p. 3.)

Hooks also contends she was "subjected to a hostile work environment" throughout her tenure with RDS and that her coworkers and members of management, "the majority of whom [we]re White, Italian, younger males," treated her differently by excluding her "from conversations, lunch, greetings," and exhibiting "lack of courtesy and slighting behavior." (ECF 9 at ECF p. 6.) Hooks alleges she "discovered that she was referred to as 'swamp monkey,'" albeit without specifying who used the disparaging term or when or where it was used. (ECF 9-1 at ECF p. 1.) She alleges she complained about the hostile work environment to the General Manager and

a Manager in June 2022 and, "[a]lthough there was a slight change, there was no reprieve" after

her complaint. (ECF 9 at ECF p. 6.) Hooks provides no details about what changed.

## II.   <u>STANDARD OF REVIEW</u>

"A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal

issue." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). To satisfy Federal

Rule of Civil Procedure 12(b)(6), Hooks' Amended Complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Plausible does not mean possible. . . . But plausible does not mean probable either. . . . The court

need only be able to draw a reasonable inference that the defendant has broken the law." *Martinez*,

986 F.3d at 265 (citing *Iqbal*, 556 U.S. at 678) (internal quotation and further citations omitted)).

"[T]he plausibility determination is a 'context-specific task that requires the reviewing court to

draw on its judicial experience and common sense.'" *Schuchardt v. President of the U.S.*, 839 F.3d

336, 347 (3d Cir. 2016) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir.

2016)).

Because Hooks is representing herself, the Court construes her allegations liberally. *Vogt

v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). There is "an understanding that a court must make

reasonable allowances to protect *pro se* litigants from the inadvertent forfeiture of important rights

due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019). Where Hooks' factual allegations are well-pleaded, they are presumed to be true and

construed in the light most favorable to her. *Iqbal*, 556 U.S. at 679; *Connelly v. Lane Constr. Corp.*,

809 F.3d 780, 787 (3d Cir. 2016). Conclusory assertions of fact are not presumed to be true, legal

conclusions are affirmatively disregarded, and the Court cannot draw reasonable inferences from

either. *See Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 790. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the Amended Complaint "has alleged—but it has not 'show[n]'—'that [Hooks] is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

## III.   <u>DISCUSSION</u>

### A.   **Hooks Fails to State a Title VII Claim**

Title VII provides that employers may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Hooks ostensibly alleges RDS discriminated against her in violation of Title VII by treating her differently from its other employees and subjecting her to a hostile work environment. (*See* ECF 8 at ECF p.1; ECF 9 at ECF p. 6.)

### 1.   **Disparate Treatment**

To proceed on a Title VII disparate treatment claim, Hooks must allege sufficient facts to show: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) either the adverse employment action occurred under circumstances that give rise to an inference of discrimination or similarly situated individuals outside of her protected class were treated more favorably than she was. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The "central focus . . . is always whether the employer is treating some people less favorably than others" because of their protected status. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003) (internal quotations omitted). RDS argues Hooks fails to plead facts that give rise to an inference of discrimination.

(Def.'s Mem., ECF 14-2 at 3-5.) The Court agrees with RDS.

Hooks alleges "[t]here was a clear, distinct, highly noticeable difference in how [she] was treated compared to how an Italian man was favorably treated . . . ." (ECF 8 at 1.) The unnamed man "sat across from" Hooks. (*Id.*) Hooks also alleges she was treated less favorably than "[t]wo white men [who] were given their jobs back after being terminated" while she was employed at RDS. (ECF 8 at 1.) She does not, however, allege any facts to show she was similarly situated to either the Italian man who sat across from her or the two white men who returned to work for RDS after being fired.

To determine whether Hooks was similarly situated to these other employees, the Court may consider whether they "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them." *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011). "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (citation and internal quotations omitted).

Although Hooks and the other employees all worked at RDS, she has not alleged any other similarities that would permit the Court to draw a reasonable inference that either is an appropriate comparator. She alleges no facts to show that either of the other terminated employees dealt with the same supervisor as she did or that their jobs shared similar responsibilities with hers.[3] And she

---

[3]    In Hooks' response to RDS's motion, she admits that neither of the two white men who were rehired after they had been terminated "held the same position as [she] did." (ECF 23 at ECF p. 1.) She attempts to show they shared the same supervisor by explaining that Robert Bandura "told [her] that the decision [to terminate her] was made by [General Manager] Frank [Tucci]" and that "ultimately everyone reports to or must answer to GM, Frank." (*Id.*) However, Hooks' Amended Complaint does not contain any allegations to support her contention that Tucci supervised her and the other employees who were rehired. (*See* ECF 8 and 9.)

does not allege they were terminated after missing shifts without first obtaining coverage or other conduct similar to hers. Hooks has not sufficiently alleged a Title VII claim based on disparate treatment.

### 2.      Hostile Work Environment

To assert a Title VII hostile work environment claim based on her race, color, or gender, Hooks must allege she: (1) suffered intentional discrimination because of her protected characteristics; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would detrimentally affect a reasonable person in like circumstances, and (5) there is a basis for employer liability. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). "Whether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[A]n isolated incident of discrimination (if severe) can suffice to state a claim for harassment." *Id.* at 265.

Hooks alleges she was "referred to as a swamp monkey" (ECF 9-1 at ECF p. 1), but she provides no facts about when the phrase was used or whether it was used once or repeatedly and does not identify who used it to describe her. Without diminishing the phrase's offensiveness, absent any details or context surrounding its use, it does not give rise to a reasonable inference that Hooks was subjected to "severe or pervasive" discrimination based on her race or color. *Cf. Rizas v. DeJoy*, No. 21-20396, 2023 WL 4295834, at *6 (D.N.J. June 30, 2023) (dismissing hostile work environment claim because the Court could not "draw a connection between an unidentified person's use of 'animal' or 'animal sounds' and severe or pervasive discrimination" absent "any

details or context of the alleged incident"). Hooks also alleges her colleagues discriminated against her because they "snubbed" her by saying good morning to an Italian man seated across from her without greeting her as well. (ECF 8-1 at ECF p. 16.) She contends they made her "uncomfortable" by failing to include her in ordering lunch and then standing around her desk to eat. (*Id.*) However, she does not allege how often or when this happened. Even considering the totality of the circumstances, the Court cannot reasonably infer from Hooks' allegations that she has satisfied the "severe or pervasive" standard required to allege a Title VII claim based on a hostile work environment.

### B.  Hooks Fails to State a Claim under the ADEA

To proceed on a claim that RDS discriminated against her based on her age, Hooks must allege facts to show RDS took an adverse action against her "because of" her age. *Martinez*, 986 F.3d at 266. Her Amended Complaint must show she: (1) was over forty years old; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) "was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* (citation omitted).

Hooks' ADEA claim fails because she does not allege sufficient facts to raise an inference of age discrimination. She alleges RDS hired a "younger woman" eight months after hiring Hooks "to work [Hooks'] shift (time and days)" and the new hire was given "seniority-based" privileges that Hooks did not have despite her younger age. (ECF 9-1 at ECF p. 1.) But this allegation is not sufficient to show that Hooks was, more likely than not, discriminated against based on her older

age. Rather, Hooks alleges that the "young lady who attended Temple Univ[ersity] was referred and hired to work [Hooks'] shift" because RDS was "trying to be proactive" considering Hooks' anticipated transfer to a new RDS dealership ("Lambo Philly") which "was being constructed right up the street." (ECF 8-1 at ECF p. 13.) More specific allegations are required to show that age discrimination was a plausible reason for Hooks' termination or any other adverse action that she might attempt to plead. Hooks' ADEA claim is dismissed.

### C.      Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires," which "certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (holding that a district court considering a 12(b)(6) motion "must permit a curative amendment unless such an amendment would be inequitable or futile") (citation omitted). It is not clear that Hooks cannot amend her claims to allege enough facts to state a proper basis for relief under Title VII or the ADEA, so she may amend them if she can do so consistent with the law set forth in this Memorandum.

## IV.      CONCLUSION

For the foregoing reasons, Hooks' Complaint is dismissed with leave to amend. Hooks is cautioned that if she files a Second Amended Complaint, it must be a single document bearing a caption with the Court's name and the names of the parties that lists her claims in numbered paragraphs consistent with Federal Rule of Civil Procedure 10. "Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims." *Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) (citation and internal quotation

omitted). Claims or allegations that are not included in a Second Amended Complaint will not be considered part of this case.

An appropriate Order will be docketed separately.